**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**October 24, 2019**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP1271**

**STATE OF WISCONSIN**

Cir. Ct. Nos. **2016CV214**
**2016CV368**

**IN COURT OF APPEALS**
**DISTRICT IV**

DONALD ISHERWOOD, LYNN ISHERWOOD
AND ISHERWOOD FAMILY FARMS, LLC,

    PETITIONERS-RESPONDENTS,

V.

PORTAGE COUNTY DRAINAGE DISTRICT,

    RESPONDENT-APPELLANT.

APPEAL from a judgment of the circuit court for Portage County: JON M. COUNSELL, Judge. *Affirmed*.

Before Fitzpatrick, P.J., Blanchard, and Kloppenburg, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Donald Isherwood, Lynn Isherwood, and Isherwood Family Farms, LLC ("the Isherwoods") filed two petitions for certiorari review challenging actions by the Portage County Drainage District ("the District").  These actions involve materials that the Isherwoods placed in a lateral drainage ditch ("the lateral") that runs through the Isherwoods' property.  The Isherwoods take the position that the materials they placed in the lateral created an enhanced habitat for trout and improved the flow of water in the lateral.  In their petitions, the Isherwoods contend that the District improperly issued an order announcing a plan "to remove all obstructions in the Isherwood lateral," and later improperly denied the Isherwoods' application for after-the-fact approval of the habitat project.  In this appeal of the consolidated certiorari actions, the District challenges various rulings of the circuit court in favor of the Isherwoods.  For reasons we explain below, we affirm.

## BACKGROUND

¶2     The following undisputed background includes facts found by the circuit court following a three-day evidentiary hearing.

¶3     The lateral on the Isherwoods' property is a District ditch, subject to management by the District.  *See generally* WIS. STAT. ch. 88 ("Drainage of lands," including subchapters addressing the establishment of, and the powers and duties of, drainage boards).[1]

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

¶4 The District dredged the lateral in 2009. In 2011, the Isherwoods explored the possibility of placing objects in the lateral for the purpose of improving it as a trout habitat ("the habitat project"). This exploration included communication between the Isherwoods and the Wisconsin Department of Agriculture, Trade, and Consumer Protection (DATCP). (As explained in more detail below, in general DATCP interacts with drainage boards pursuant to state statutes and administrative code.) A DATCP representative told the Isherwoods that DATCP would be happy to cooperate with the Isherwoods on the proposed habitat project, but that the Isherwoods would need to work with the District and take such steps as obtaining "an engineering study" "that predicts that there will be no adverse impacts on upstream and downstream landowners."

¶5 In 2013, the Isherwoods deposited numerous trees, deadfall, and logs in the lateral for the purpose of improving it as a trout habitat. It is undisputed that the Isherwoods did this without having obtained an engineering study of the type referred to by the DATCP representative and without having obtained a permit or other form of approval from any agency.

¶6 In June 2016, the District issued a notice to the Isherwoods, asserting that the habitat project created an "obstruction" to water flow in the lateral and demanding its removal, citing WIS. STAT. ch. 88. *See* WIS. STAT. § 88.91 (prohibiting any person from placing "any kind of obstruction to the free flow of water … in any drainage ditch"; creating liability for a $100 fine and for "all damages" to the drainage district and "all persons whose ditches or lands are injured for such obstruction").

¶7 Approximately one month later, the Isherwoods responded to the District in writing to state that they did not plan to remove the habitat project

because they believed that it did not obstruct the free flow of water in the lateral. The District promptly issued a new notice, this time for a public hearing on July 11, 2016, to address the alleged obstruction to the free flow of water in the lateral. The meeting was held as scheduled, with the District board taking testimony.

¶8 At the conclusion of the July 11 meeting, the District issued a "Decision and Order," finding in part that the Isherwoods had intentionally placed in the lateral "illegal obstructions and blockages, including numerous Christmas-type trees and sawed off logs." The District stated that it was authorized "to remove all obstructions in the Isherwood lateral." *See* WIS. STAT. § 88.21(12) (describing powers of drainage boards).

¶9 The Isherwoods promptly filed in the circuit court a petition for certiorari review ("the first petition"), challenging the District's July 11 decision and order, pursuant to WIS. STAT. § 88.09.[2] The Isherwoods' first petition alleged

---

[2] As reflected in the text we now quote, and as pertinent to some references in this opinion, certiorari review under WIS. STAT. § 88.09 differs from some other forms of certiorari review, notably including the ability of the circuit court to take evidence if necessary to supplement the certiorari record:

> Any person subject to an order or rule of the drainage board may, within 30 days after publication of the order or rule, commence an action seeking the remedy available by certiorari. The court may not stay proceedings involving the order or rule when an action is commenced, but may, on application, on notice to the board and for cause, grant a restraining order. The board is not required to return the original papers acted upon by it, but may return certified or sworn copies of the papers. If necessary for the proper disposition of the matter, the court may take evidence, or appoint a referee to take evidence and report findings of fact and conclusions of law as the court directs, which shall constitute a part of the proceedings upon which the determination of the court shall be made. The court may reverse

(continued)

4

that the District had: scheduled the July 11 hearing in a manner designed to limit the Isherwoods' ability to be fully heard; made four errors of law; and acted arbitrarily and capriciously by failing to consider the available evidence regarding alleged obstructions.

¶10 Also in July 2016, within the first petition, the Isherwoods filed a motion for a temporary injunction under WIS. STAT. § 813.02, seeking an order prohibiting the District from removing the habitat project before the circuit court could resolve the first petition on the merits. (However, as referenced further down in this background summary, the Isherwoods would not file a notice of hearing for their temporary injunction motion until May 2017, and the court took no action on the temporary injunction motion in the meantime.)

¶11 On August 4, 2016, the District filed its answer to the first petition, which included a counterclaim requesting that the circuit court find that the Isherwoods "are in violation of WIS. STAT. § 88.91" and that the court order the Isherwoods to remove "all unlawful obstructions" from the lateral.

¶12 On October 28, 2016, while the first petition was pending, the Isherwoods applied to the District for a "permit" to allow the habitat project—that is, they sought District approval as part of the permitting process. The District denied this request on November 9, 2016.

---

or affirm, wholly or partly, or may modify, the order or rule brought up for review.

Section 88.09; s*ee also* **Nowell v. City of Wausau**, 2013 WI 88, ¶30, 351 Wis. 2d 1, 838 N.W.2d 852 (explaining that certiorari review that is created by statute may enlarge the scope of review to allow the circuit court to take evidence).

¶13    On December 7, 2016, the Isherwoods filed a second petition for certiorari review ("the second petition") in the circuit court, this time challenging the District's November 9 denial of their after-the-fact "permit" request. The second petition alleged that the District had scheduled the November 9 meeting in a manner designed to limit the Isherwoods' ability to be fully heard; made three errors of law; and acted arbitrarily and capriciously by failing to consider available evidence.[3]

¶14    On May 12, 2017, the District filed a motion and brief requesting summary judgment in its favor, dismissal of the petitions, and a judgment on its counterclaim. In support, the District filed affidavits with some documents, but without purporting to supply the court with certiorari records for either of the two certiorari actions. (The District would ultimately file a single certiorari record in October 2017.)

¶15    On May 17, 2017, the Isherwoods filed and served a notice scheduling a hearing for June 28, 2017, for the circuit court to consider their request for a temporary injunction to preserve the status quo.

¶16    On June 6, 2017, however, the District destroyed the habitat project in its entirety. It did this before the hearing on the Isherwoods' motion for a temporary injunction could be held, and without giving any prior notice of its intention to destroy the habitat to the circuit court or the Isherwoods. After the fact, the District represented to the circuit court that the District had come to

---

[3] In January 2017, the circuit court approved a stipulation of the parties to consolidate the first petition and the second petition into a single case.

believe that complete removal was necessary based on a fear that culverts might become clogged as a result of the habitat project.

¶17 On June 12, 2017, the Isherwoods filed a motion for sanctions, characterizing as "egregious" the District's removal of the habitat project without notice to the circuit court or the Isherwoods. At the hearing originally scheduled to consider the Isherwoods' motion for a temporary injunction, the circuit court noted that the parties were about to complete briefing of the District's motion for summary judgment, and decided to hold the Isherwoods' motion for sanctions in abeyance.

¶18 At a hearing on August 2, 2017, the court rejected each of the three grounds that the District offered for summary judgment in its favor.

¶19 Following a January 2018 evidentiary hearing before the court, the court issued findings of fact, conclusions or law, and an order. The court's findings of fact included the following. The District's November 9, 2016 denial of the Isherwoods' after-the-fact "permit" request was motivated "in significant and substantial part" both "by personal animus toward petitioner Donald Isherwood" and "by a desire to punish petitioner Donald Isherwood for exercising his right to speak out on governmental issues." The District's stated reason for the "permit" denial was "not credible," but was "a mere pretext and subterfuge" reflecting only the District's "will and not a reasoned decision."

¶20 Regarding the habitat project, the court found that it "did not affect the flood flow capacity of the lateral or the carrying capacity of the lateral at normal water levels, or obstruct the flow of the water." It "improved trout habitat and provided a public benefit."

¶21     Turning to the District's June 6, 2017 removal of the habitat project, the court found that this "was a conscious attempt by the District to: (1) attempt to get [the Isherwoods] to give up on this lawsuit[;] (2) if the suit continued, to limit the court's ability to preserve the project; and (3) if the suit continued, to limit the ability of the court and parties to access relevant evidence," and "was a conscious effort to affect the outcome of the litigation and a flagrant, knowing disregard of the judicial process."

¶22     The court reached seven conclusions of law: the District denied the permit based on "an unknown, and therefore incorrect, theory of law"; the denial was "arbitrary, oppressive, and unreasonable"; "[n]o evidence was taken at the hearing [before the District] supporting the District's denial of the permit"; the habitat project did not involve any "obstructions"; the District's June 6, 2017 removal of the habitat project "constituted spoliation of evidence, and was egregious conduct warranting a sanction from the court"; the "evidence removed by the District … was critical to an evaluation of the claims and issues between the parties"; the District must pay the cost of re-installing the habitat project and pay the Isherwoods' attorneys fees and costs in this case.

¶23     The court ordered that the Isherwoods' "permit" application to the District be granted, and that the Isherwoods "may re-install the project" over the following two-year period, so long as they obtained "any other necessary permits prior to re-installation of the project." The court also ordered, as sanctions for the District's spoliation of evidence, that it pay the Isherwoods' attorneys fees and costs (which totaled $48,733.72) and the "actual costs" of the re-installation, not to exceed $8,000.

¶24   The District makes the following arguments, which we address in turn below: (1) we should reverse the circuit court's decision to deny the District's motion for summary judgment on its counterclaim (that the Isherwoods violated WIS. STAT. § 88.91 by creating an obstruction to the free flow of water in the lateral); (2) the circuit court committed reversible error "when it held [an evidentiary hearing] on whether the unpermitted structures were 'obstructions,'" because this allowed the court to effectively substitute its own view of what an "obstruction" is for the view of the District, based on evidence that duplicated the evidence presented at the District's July 11, 2016 hearing; (3) various or all of the circuit court's rulings should be reversed because the court failed to recognize that the District has broad authority under WIS. STAT. ch. 88 and administrative code provisions to properly maintain drainage ditches within its jurisdiction, and the District need not provide any due process to property owners in conducting maintenance activities; (4) the circuit court erroneously exercised its discretion "when it imposed sanctions on the District for actions well within the District's authority and discretion"; and (5) the court's order regarding District approval as part of the permit process was improper.

## DISCUSSION

### I.   DENIAL OF SUMMARY JUDGMENT

¶25   The District argues for reversal of the circuit court's decision to deny the District's motion for summary judgment on the District's counterclaim that the Isherwoods violated WIS. STAT. § 88.91 by creating an obstruction to the free flow of water in the lateral.  We reject this argument because it is based on the flawed proposition that placement of any object, or collection of objects, of any size or composition in any ditch always obstructs "the free flow of water" in the ditch, as

that phrase is used in § 88.91, even when placement has the effect of the *improving*, not hindering, the free flow of water in the ditch.[4]  Therefore, summary judgment would not have been appropriate.

¶26    We review a circuit court ruling on a motion for summary judgment de novo, applying the same methodology as the circuit court.  ***Kieninger v. Crown Equip. Corp.***, 2019 WI 27, ¶11, 386 Wis. 2d 1, 924 N.W.2d 172.  Summary judgment is appropriate only "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  ***Id.*** (quoting WIS. STAT. § 802.08(2)).

¶27    Determining the meaning and application of WIS. STAT. § 88.91 is a question of law that we review de novo.  *See **id.***, ¶12.

¶28    We now reproduce WIS. STAT. § 88.91 in its entirety, with emphasis on key phrases:

> **(1)** Except as authorized by s. 88.93 [addressing a right to take water from a ditch not pertinent here], no person shall *place any kind of obstruction to the free flow of water*, including any soil willfully deposited, *in any drainage ditch*, constructed under any drainage law of this state or lawfully constructed by any other person, without

---

[4] We assume without deciding that, even though this is an action for circuit court certiorari review of agency conduct, the District could properly:  (1) bring a counterclaim seeking to impose fines on the Isherwoods for placing obstructions in the lateral, and (2) move for summary judgment on this counterclaim.  We express no opinion on either topic, but note that both may present substantial issues.

Further, we assume in favor of the District that it did not forfeit the summary judgment argument that the District raises on appeal by failing to preserve it as an issue in the circuit court during the course of back-and-forth discussion with the circuit court at the August 2, 2017 hearing.

> first obtaining the written consent of the drainage board or other person or authority in charge of such ditch.
>
> **(2)** Any person violating this section may be fined not more than $100 and in addition is liable to the drainage district and to all persons whose ditches or lands are injured by such obstruction for all damages caused by the obstruction.

WIS. STAT. § 88.91 (emphasis added). As the Isherwoods point out, Chapter 88 does not include a definition of the term "obstruction." Surrounding statutes contain potentially related language, but in different contexts.[5] Neither party develops significant argument based on these surrounding statutes, and we do not discern in them meaningful clues to the interpretation of WIS. STAT. § 88.91 as pertinent here.

¶29 We now fill in additional background specific to this issue. To repeat, the District renews only the summary judgment ground that the District is entitled to summary judgment on its counterclaim that the Isherwoods violated WIS. STAT. § 88.91 by placing obstructions to the free flow of water in the lateral. The District argued that, because the Isherwoods did not contest having placed "vegetative materials" in the lateral, they had obstructed water flow in the lateral,

---

[5] One statute addresses "obstruction" to "the natural flow of water" in "any natural watercourse," referring to the "natural flow" being "retarded by the negligent action of the owner, occupant or person in charge of the land." WIS. STAT. § 88.90(1). It also refers to the circumstance in which "any natural watercourse becomes obstructed through natural causes" causing "damage[]." Sec. 88.90(3).

Another statute addresses the situation in which an "embankment, grade, culvert or bridge, including the approaches to the culvert or bridge, built or maintained by any person across a natural watercourse or natural draw obstructs the watercourse or draw so that waters therein are set back or diverted upon any lands in a drainage district." WIS. STAT. § 88.89(1).

because any such placement will always "block, fill, interfere with, impede[] and retard" the flow of water in the ditch.[6]

¶30     The Isherwoods respond by pointing to testimony from a professor of water resources, which the Isherwoods presented on summary judgment, to the effect that the habitat project improved the flow of water through the lateral.

¶31     At the hearing on the summary judgment issue, the circuit court explained that summary judgment on this ground was "premature," because the issue as to whether the Isherwoods had created one or more obstructions was a mixed question of fact and law that needed to be resolved as part of the parties' disputes over whether the District's conduct should be sustained on certiorari review.  The court reasoned that there was a genuine question of material fact about whether the Isherwoods had created an obstruction and it should be resolved in the course of addressing the consolidated petitions for certiorari review in connection with an evidentiary hearing before the court.[7]

---

[6] There is no dispute that the Isherwoods did not obtain written consent from any authority in charge of the lateral before creating the habitat project.  *See* WIS. STAT. § 88.91(1) ("without first obtaining the written consent of the drainage board or other person or authority in charge of such ditch").

Separately, we note that the District presents its summary judgment argument as a challenge to the habitat project as a whole.  The District does not argue that it provided the circuit court with genuinely undisputed evidence that any subpart or component of the habitat project constituted one or more obstructions to the free flow of water in the lateral, even if other parts of the habitat project might not have constituted one or more obstructions.  We emphasize that what we address here is solely the District's all-or-nothing argument that the entire habitat project constituted a violation of WIS. STAT. § 88.91.  Thus, we take no position on whether, in other cases, a drainage board might develop grounds to establish that a single element or several elements of a project that purports to improve the flow of water in a ditch would become or are obstructions to the free flow of water.

[7] During the August 2, 2017 hearing the circuit court also suggested that all of the District's summary judgment motions might be premature because the District had failed to

(continued)

12

¶32     We reject the only argument that the District makes in support of summary judgment in its favor.  As we now explain more fully, the legislature has decided to prohibit only the placement of objects that have the effect of obstructing the "free flow of water" in the ditch and not, as the District would have it, prohibit all placements of objects even when placement improves the free flow of water.

¶33     The District does not argue that the summary judgment record includes evidence that indisputably rebuts the testimony of the professor of water resources or that reveals his testimony to be inadmissible, incredible, or fatally inconsistent.  Instead, the District makes an argument based entirely on what it calls a "common sense" interpretation of the language of WIS. STAT. § 88.91.  This interpretation is that the phrase "place any kind of obstruction to the free flow of water … in any drainage ditch" means "place any object in the ditch," because all objects placed in a ditch necessarily create an immediate obstacle or impediment to water flow.  That is, the District's "common sense" notion is that, because any object placed in a ditch will create an impediment to water flow in the immediate vicinity of the object that did not exist before placement, the word "obstruction" means any placement of any object.  The District's position is extreme.  At oral argument, it took the following position:  "You can't even put a shovelful of soil into the lateral without a permit."

---

provide the court with a certiorari record before the District filed its summary judgment motion. The District acknowledged at oral argument that it "probably didn't have a right to the entry of an order" at the time it moved for summary judgment.  However, we assume without deciding that the District's summary judgment motion was not premature for this reason.

¶34 The problem with this all-placement-is-obstruction argument is that it ignores the phrase that explains the type of prohibited obstruction specified in WIS. STAT. § 88.91. What matters is that the placement obstructs "the free flow of water … in any drainage ditch." And, as noted, the Isherwoods point to the professor's testimony about improvement of flow in the lateral.

¶35 The District quotes Donald Isherwood's testimony that the purpose of the habitat project was to "alter" water flow in the lateral, presenting this quote as if it constitutes an admission of "obstruction." However, in the course of this testimony, Isherwood explained his view that, consistent with the testimony of the professor of water resources, "alteration" of water flow had the effect of improving water flow in the lateral. To repeat, our conclusion is that WIS. STAT. § 88.91 does not prohibit alteration of water flow in a ditch, it prohibits only obstruction of water flow.

¶36 It does not add anything to the District's argument for it to emphasize that WIS. STAT. § 88.91 speaks of "*any kind* of obstruction," because the "any kind" qualifier does not address the phrase "the free flow of water." "Any kind of obstruction" simply means that the obstructing object may be of any size, material, etc. For the same reason, it does not add for the District to point to the phrase "including any soil willfully deposited." If "willfully deposited" "soil" does not obstruct the free flow of water, then the soil is not an obstruction under § 88.91.

¶37 Further, when the Isherwoods on appeal summarize the summary judgment evidence that creates an issue for an evidentiary hearing on the

obstruction issue, the District has no substantive reply, conceding the point.[8] This failure by the District is an independent ground justifying rejection of its argument. *See United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (appellant's failure to respond in reply brief to an argument made in response brief may be taken as a concession).

¶38 At oral argument, appellate counsel for the District argued that the legislature, in enacting WIS. STAT. § 88.91, must have subscribed to the District's all-placement-is-obstruction view, because any other approach would "handcuff" the ability of Wisconsin drainage boards "to make judgment calls about … what's obstructing the free flow of water," and would require boards to invest in expensive studies to prove what hinders or improves water flow in a ditch. We are not persuaded that the legislature would have considered drainage boards incapable of evaluating, in a cost-effective manner, all defenses to allegations of violations of § 88.91 of the type offered by the Isherwoods here. Notably, the District fails to provide us with any basis to conclude that it would have been unduly expensive or complicated for it to address any potential defects in the testimony given by the professor of water resources. Indeed, in this case the District was able to present expert testimony in an attempt to counter the testimony of the professor of water resources.

¶39 In sum, we conclude that the circuit court properly denied the District's motion for summary judgment.

---

[8] In its reply brief on this point, the District briefly raises a point that is not pertinent to the summary judgment issue (about whether the habitat project had proper permits) and merely repeats its all-placement-is-obstruction position in a conclusory way.

## II. EVIDENTIARY HEARING "EXCEEDED LIMITS OF CERTIORARI REVIEW"

¶40 The District argues that the circuit court "erred when it held [an evidentiary hearing] on whether the unpermitted structures were 'obstructions,'" because the evidentiary hearing allowed the court to effectively substitute its own view of what an "obstruction" is in this context for the District's view, based on evidence that the District asserts was duplicative of the evidence presented to the District at the July 11, 2016 hearing. This, the District contends, exceeded the proper scope of the court's certiorari review. *See* ***Klinger v. Oneida Cty.***, 149 Wis. 2d 838, 841, 844-47, 440 N.W.2d 348 (1989) (holding that if circuit court's discretionary decision to take evidence under statute leads to "substantially the same" evidence as that considered by municipality, circuit court applies deferential, common-law certiorari standard to municipal findings; but not reaching standard used when evidence is not substantially the same). We do not address whether the evidence presented at the evidentiary hearing was duplicative or substantially similar to the evidence presented to the District. This is because we reject the District's argument based on the District's forfeiture of this issue by failing to preserve it in the circuit court.

¶41 In part to avoid "endless error-correcting review," parties are "accountable for the litigation strategies they choose in the circuit court." ***Nickel v. United States***, 2012 WI 22, ¶24, 339 Wis. 2d 48, 810 N.W.2d 450. Thus, "'issues must be preserved at the circuit court,'" otherwise they "'generally will not be considered on appeal.'" ***Id.***, ¶22 (quoting ***State v. Huebner***, 2000 WI 59, 235 Wis. 2d 486, ¶¶10-11, 611 N.W.2d 727). This "'essential'" rule permits circuit courts to correct or avoid errors, creates notice of issues and fair opportunities to address objections, encourages diligent advocacy, and prevents

16

attorneys from failing to object to an error for strategic reasons. *Id.*, ¶22 (quoting *Huebner*, 235 Wis. 2d 486, ¶12).

¶42 On appeal, the Isherwoods present a developed argument that the District failed to object to the circuit court that, under WIS. STAT. § 88.09, the court could not hold an evidentiary hearing, or should have held a different sort of evidentiary hearing. In reply, the District has nothing of substance to say regarding forfeiture. The District provides a single record citation purporting to show that it "raise[d] the issue" of the scope of certiorari review to the court. However, that statement is off topic. The quotation addresses authority to grant a permit based on DATCP regulations that we discuss in more detail below, and does not address the court's authority to hold an evidentiary hearing or the court's scope of review of the evidence adduced at that hearing. At oral argument on this topic appellate counsel for the District pointed to what may be a different passage in the record, but the cited passage comes no closer to the target.

¶43 Our own review of the pertinent portions of the record reveals that, before the evidentiary hearing, counsel for the District unambiguously told the circuit court that the District "concur[s] [with] the suggestion that there needs to be a court trial," meaning an evidentiary hearing, and took the further position that it was "obviously in the full discretion of the Court" what forms of evidence the parties could offer at the evidentiary hearing. Moreover, the District fails to point to a portion of the record post-dating the submission of evidence at the evidentiary hearing showing that the District presented the court with an objection regarding the scope of the court's review of the evidence adduced at the hearing.

### III. PROPRIETY OF REMOVAL OF HABITAT PROJECT

¶44    The District makes an abstract argument that we could reject on the ground that it is undeveloped, but which we briefly address as best we can. The argument appears to be that various or all of the circuit court's rulings (which specific rulings is not clear) should be reversed (under an unspecified standard of review). This is because, the District argues, the court failed to recognize that the District has the broad authority and obligation under WIS. STAT. ch. 88 and administrative code provisions to properly maintain drainage ditches within its jurisdiction, and that the District need not provide any due process whatsoever to property owners in conducting maintenance activities.[9] We now explain why we would reject an even better-developed version of this argument for at least the reason that the District ignores the circuit court's specific findings of seriously improper motivations and actions by the District in the course of this matter.

¶45    To repeat, the court made striking findings that included the following, which the District does not contest on appeal. In November 2016, the District denied the Isherwoods' after-the-fact request for approval "in significant and substantial part" in order to satisfy plainly improper interests. Then, in June

_____

[9] In arguing for a grant of broad authority, the District emphasizes the following regulation:

> **(4)** REMOVING OBSTRUCTIONS. A county drainage board shall remove sediment dams, windfalls, deadfalls, sand bars, beaver dams and other obstructions from district ditches. The county drainage board shall remove the obstructions annually, or more frequently as necessary. The county drainage board shall also remove submerged vegetation from district ditches as necessary.

WIS. ADMIN. CODE § ATCP 48.26(4) (through Aug. 26, 2019). All references to the Administrative Code are to the August 2019 register.

2017, the District removed the habitat project in its entirety in "flagrant, knowing disregard of the judicial process" in this case, with the conscious intent of denying the court and the Isherwoods access to relevant evidence.

¶46     To resolve this issue we assume without deciding that the District has broad statutory and regulatory authority, and an obligation, to properly maintain drainage ditches.  As part of this assumption, we accept for purposes of argument that the District would have been entitled—before any legal process was initiated by anyone in this matter—to remove the habitat project upon discovering it, without giving advance notice to any person or entity.[10]  Even with these assumptions, however, the District fails to explain how, under any standard of review, any ruling of the circuit court was not justified by the court's striking findings regarding the District's motivations and actions.  In particular, assuming that the District would have been entitled to remove the habitat project under other circumstances, the District fails to explain why the circuit court could not properly base each of its rulings on findings of seriously improper motivation for District action, seriously improper District action, or both.

¶47     One example suffices to explain our conclusion that the District's broad-authority-to-maintain-ditches argument must fail.  The District contends that the circuit court failed to recognize that its removal of the habitat project was proper because WIS. STAT. ch. 88 does not contain any requirement that a drainage board provide any form of notice or process to anyone "before it undertakes maintenance activity in a ditch that it is empowered to undertake by statute or

---

[10] At oral argument, counsel for the Isherwoods "100 percent" conceded the following: "if the District had been acting in good faith, [it] could have removed the project."

rule." However, the circuit court concluded that, given the ongoing litigation, the District's removal of the habitat project "constituted spoliation of evidence, and was egregious conduct warranting a sanction from the court."[11] The closest the District comes to addressing the circuit court's spoliation determination in the course of this argument is to note that the Isherwoods failed to press their motion for a temporary injunction until May 2017 (shortly before the District removed the habitat project) and never moved for a temporary restraining order. The District effectively argues, both in its briefing and at oral argument, that the District was free to intentionally destroy evidence, no matter how obviously central to this litigation, so long as no injunction or restraining order was in place. However, the District makes no attempt to support this argument and we reject it as unsupported.

## IV. SANCTIONS FOR SPOLIATION

¶48    As noted above, the circuit court sanctioned the District for what the court determined was "egregious" destruction of evidence in removing the habitat project. The District does not argue that the circuit court misapplied any legal standard in finding spoliation and imposing sanctions, nor does the District challenge the court's underlying findings of fact summarized above. Instead, the District contends that the circuit court erroneously exercised its discretion "when it imposed sanctions on the District for actions well within the District's authority and discretion," largely based on arguments that we have already rejected.

---

[11] At oral argument, the District acknowledged that it was not aware of any reason that the District could not have timely brought to the attention of the circuit court, *before* removing the habitat project, any alleged problem that the District thought required its immediate removal.

¶49    Sanctions for destruction of evidence serve to uphold the truth-seeking function of the justice system and to deter parties from destroying evidence. ***Morrison v. Rankin***, 2007 WI App 186, ¶16, 305 Wis. 2d 240, 738 N.W.2d 588. Both a decision by a circuit court whether to impose sanctions for the destruction or spoliation of evidence, and its decision as to what sanctions to impose, are committed to the court's discretion. ***Id.***, ¶15. "We affirm discretionary rulings if the [circuit] court has examined the relevant facts, applied a proper standard of law, and, utilizing a demonstratively rational process, reached a conclusion that a reasonable judge could reach." ***Id.***

¶50    We need not address the District's repeated arguments again. We discern only one argument from the District on the sanctions topic that we have not already resolved. The District briefly asserts that the circuit court erroneously exercised its discretion in sanctioning it because the parties had "extensively documented" the habitat project before the District removed it, creating a sufficient evidentiary basis to allow the court to find any pertinent facts. We question the premise that the court could not have imposed sanctions on the District even if documentation by the parties significantly limited the negative effects of the District's evidence destruction. But we reject this argument for the independent reason that the District's bare assertion fails to raise a question about the pertinent factual findings made by the court: that the District's intentional subversion of the litigation process caused the court to lose "a lot" of relevant information "by not being able to see" what the District removed, and made it more difficult for the court to evaluate whether the habitat project constituted an obstruction of the water flow in the lateral.

## V. CIRCUIT COURT'S AUTHORITY TO REVERSE DENIAL OF AFTER-THE-FACT REQUEST FOR DISTRICT APPROVAL

¶51    As noted above, the circuit court ordered that the Isherwoods' "permit" application to the District be granted, and that the Isherwoods "may re-install the project" over the following two-year period, so long as they obtain "any other necessary permits prior to re-installation of the project." The District raises a series of sometimes difficult-to-track objections to the court's order, which we now summarize and address in turn as best we are able to understand the arguments.

¶52    The District may mean to argue that the court had no authority to order that the Isherwoods' "permit" application to the District be granted (contingent on the Isherwoods obtaining all other necessary permits) because such an order cannot be derived from the terms of WIS. STAT. § 88.09, which states, "the court may reverse or affirm, wholly or partly, or may modify, the order or rule brought up for review." However, as the Isherwoods point out, "to 'reverse' a permit denial is to order a grant of a permit." In the alternative, the order required a modification of the District's order denying the "permit" request.

¶53    The District makes arguments that confusingly vary between its brief-in-chief and its reply brief (failing to develop a supported argument in the first brief) involving various references to statements in *Guerrero v. City of Kenosha Hous. Auth.*, 2011 WI App 138, 337 Wis. 2d 484, 805 N.W.2d 127. We reject whatever argument the District intends to make along these lines based on numerous distinguishing features in *Guerrero*. The court in *Guerrero* addressed a request for an equitable remedy under the purview of WIS. STAT. §§ 68.001, 68.13—which define the mode and scope of judicial review of

determinations by municipal authorities. ***Guerrero***, 337 Wis. 2d 484, ¶9; *see also* § 68.13(1) ("The court may affirm or reverse the final determination or remand to the decision maker for further proceedings consistent with the court's decision."). These statutes use different language than is used in WIS. STAT. § 88.91—which defines the mode and scope of judicial review of determinations of drainage boards. In sum, the District fails to identify any statement in ***Guerrero*** that is pertinent here.

¶54    The District argues that the circuit court gives "the Isherwoods a pass on complying with the substantive requirements that WIS. ADMIN. CODE § ATCP 48.36 mandates be included within any application to put structures in a drainage ditch." In order to explain our understanding of this argument and resolve it, we now summarize pertinent code provisions and additional background facts, then address this argument.

¶55    WISCONSIN ADMIN. CODE § ATCP 48.36 is part of WIS. ADMIN. CODE ch. ATCP 48, which is administered by DATCP. Chapter ATCP 48 governs how DATCP interacts with drainage boards. Notably, in light of the District's arguments:

- "[A] county drainage board may not do any of the following without [DATCP's] written approval: … authorize any person to install or modify any structure in a district drain." WIS. ADMIN. CODE § ATCP 48.34(1)(b).

- It is the drainage board, and not the landowner, who "shall apply in writing for [DATCP] approval of a proposed action under s. ATCP 48.34." WIS. ADMIN. CODE § ATCP 48.36(1).

- A drainage board application under WIS. ADMIN. CODE § 48.36(1) "shall include" items that include "design specifications" prepared by a qualified engineer. Sec. ATCP 48.36(1)(f).

¶56 Turning to additional background, there is no dispute that the Isherwoods did not include engineering drawings with their after-the-fact application for project approval to the District. There was testimony at the evidentiary hearing suggesting that the District denied the after-the-fact application in November 2016 before the Isherwoods had an opportunity to obtain such drawings, and the District acknowledged at oral argument that denial was not based on an incomplete application.

¶57 Both in its order and in its oral discussion of remedies, the circuit court was careful to explain that it was merely ordering *District* approval of the habitat project and that the court did not order any other agency, such as DATCP, to give separate approval. And, to state the obvious, no governmental agency other than the District is a party to this consolidated action, and therefore any order directing DATCP to do anything would have been dubious in any case.

¶58 With that additional background, we reject the District's argument that the court's order gives "the Isherwoods a pass on complying with the substantive requirements that WIS. ADMIN. CODE § ATCP 48.36 mandates be included within any application to put structures in a drainage ditch."

¶59 The District apparently intends to argue that the circuit court improperly ordered that DATCP must approve the habitat project regardless whether the Isherwoods satisfy proper engineering specifications standards, contrary to the terms of WIS. ADMIN. CODE §§ ATCP 48.34(1)(b), 48.36(1), 48.36(1)(f). Taking the same or a similar position at oral argument, the District suggested that the court's order was flawed in that it relieved the Isherwoods from the obligation to provide a "complete application" for review by DATCP.

24

¶60 These arguments are baseless because the circuit court explicitly left for DATCP to exercise its discretion in reviewing the habitat project to apply DATCP's proper standards based on all information that DATCP may properly require, without the court circumscribing DATCP standards or the information DATCP may require. The court's order was directed only at the District, which must approve the habitat project in all of the District's interactions with other agencies.

¶61 In closing, we note that conduct by both sides in this case— including the Isherwoods unilaterally installing the habitat project and the District unilaterally removing the habitat project in the midst of litigation—created unusual complications. From all that we see, the circuit court thoughtfully crafted orders that were tailored to fit the unusual circumstances.

## CONCLUSION

¶62 For all of these reasons, we reject the District's challenges to the circuit court and affirm the judgment.

*By the Court*.—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.