Elizabeth L. MORRISON,
Plaintiff-Respondent,

v.

Thomas V. RANKIN, M.D.,
Defendant-Appellant,

The MEDICAL PROTECTIVE COMPANY and Wisconsin
Patients Compensation Fund,
Defendants-Co-Appellants,†

SACRED HEART HOSPITAL, ABC Insurance Company
and XYZ Insurance Company,
Defendants,

PHYSICIANS PLUS INSURANCE CORP., CIGNA
Healthcare and Medicare Parts A & B,
Subrogated Defendants.

Court of Appeals

*No. 2006AP980. Submitted on briefs May 7, 2007.
Decided July 26, 2007.*

2007 WI App 186

(Also reported in 738 N.W.2d 588.)

† Petition to review denied 11/5/07.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Scott L. Howie* of *Pretzel & Stouffer Chartered*, Chicago, IL, and *William R. Wick* and *Eric G. Nycz* of *Nash, Spindler, Grimstad & Mc-Cracken, LLP*, Manitowoc.

On behalf of the defendant-co-appellant The Medical Protective Company, the cause was submitted on the briefs of *Thomas R. Schrimpf* of *Hinshaw & Culbertson LLP*, Milwaukee.

On behalf of the defendant-co-appellant Wisconsin Patients Compensation Fund, the cause was submitted on the briefs of *Mark E. Larson* and *Bradley S. Foley* of *Gutglass, Erickson, Bonville & Larson*, S.C., Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *C.M. Bye* and *Tracy N. Tool* of *Bye, Goff, Rohde & Skow, Ltd.*, River Falls.

Before Vergeront, Higginbotham and Bridge, JJ.

¶ 1. BRIDGE, J. Dr. Thomas Rankin, the Medical Protective Company ("Medical Protective"), and the Wisconsin Patients Compensation Fund ("the Fund") appeal from an order directing a verdict against Rankin on the issue of informed consent in a medical malpractice action. The directed verdict was a sanction imposed by the court for spoliation of evidence. They argue that the sanction of a directed verdict against Rankin was an erroneous exercise of discretion by the circuit court. Medical Protective and the Fund also appeal an order requiring both parties to provide insurance coverage to Rankin. They argue that coverage under Rankin's malpractice insurance does not extend to spoliation of evidence.

¶ 2. We conclude that the circuit court properly exercised its discretion in directing a verdict after determining that Rankin knew or should have known that the documents he destroyed would be evidence in the malpractice action, and that Rankin's actions constituted egregious conduct. We further conclude that, because the underlying claim in this case arose out of Rankin's professional services, Medical Protective and the Fund are responsible for coverage under Rankin's malpractice insurance policy. We therefore affirm the circuit court's order directing a verdict against Rankin and affirm the circuit court's order requiring Medical Protective and the Fund to provide insurance coverage to Rankin.

## BACKGROUND

¶ 3. On June 11, 1999, Rankin performed spine fusion surgery on Elizabeth Morrison using "BAK cages" which were relatively new to surgery at the time.

246

Morrison claimed that as a result of the surgery, she sustained an injury to the nerve roots in her low back, causing her to suffer disability in her legs. She commenced a medical malpractice action against Rankin, his insurer Medical Protective and the Fund. Morrison's complaint alleged a cause of action based on both informed consent and medical malpractice. However, during her deposition, Morrison's counsel stipulated that informed consent would not be an issue at trial.

¶ 4. Shortly before trial, Rankin's former physician's assistant provided deposition testimony bearing on the calculation of the complication rate Rankin had experienced in BAK cage surgeries. At a pretrial hearing, Morrison sought to admit evidence regarding Rankin's complication rate, which Morrison asserted Rankin failed to disclose to her prior to her surgery. The circuit court denied the motion, ruling that evidence of other instances of alleged malpractice was precluded under Wis. Stat. § 904.03 (2003–04)[1] as unfairly prejudicial. The court stated that "there will be no issue of informed consent" at trial.

¶ 5. A jury trial commenced on June 7, 2004. The initial witness was Rankin, called adversely by Morrison. Morrison's attorney asked Rankin if he had experienced complications in prior similar surgeries using BAK cages. At a sidebar following defense objections to that question, the circuit court stated that it had already ruled that the evidence on complication rates was inadmissible and sustained the objection. The court also denied a defense motion for a mistrial. However,

---

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

the court permitted Morrison to make an offer of proof on the issue. Rankin renewed his motion for a mistrial.

¶ 6. At that point the court decided to give Morrison an option: she could either go forward with the trial with no issue of informed consent, or she could set aside the stipulation regarding informed consent and continue the trial to give both parties an opportunity to develop that issue. If Morrison opted for a continuance, the court would charge her with the costs of Rankin's trial preparation. Morrison opted for a continuance. The court made the following ruling: "[M]y ruling at this point is to continue this matter to allow—to order that the stipulation and understanding regarding no informed consent be set aside so that both parties can have an opportunity to develop that issue, both for it and against it."

¶ 7. Three days later on June 10, 2004, Morrison served a motion for continuance of trial "to permit the parties to do further discovery on the issue of Dr. Rankin's BAK cage complication rate and his duty to inform his last BAK cage patient, Elizabeth Morrison, of his experience with BAK cage surgeries and his prior BAK cage surgical results." On the same date, Morrison served Rankin with interrogatories regarding Rankin's BAK cage surgeries and the complications and injuries sustained by his previous patients.

¶ 8. On July 28, 2004, Rankin shredded several thousand pounds of patient records while readying for sale the properties where the records were stored. The destroyed records included all of his patient records.

¶ 9. Rankin later testified that around April of 2004, he called his attorney to inquire generally about getting rid of his medical records. His attorney informed him that under Wisconsin law relating to the applicable statutes of limitations and repose for medical

malpractice, he was required to keep medical records for at least five years.[2] Rankin did not consult an attorney on the subject again prior to shredding the documents.

¶ 10. On October 29, 2004, Rankin responded to Morrison's discovery request by stating that he had not retained any written documents regarding the BAK cage surgeries he had performed. He stated further that without the medical records, he was unable to provide a detailed description of either the procedure or any alleged complications or injuries arising from the procedure.

¶ 11. Morrison moved for sanctions for spoliation of evidence. The circuit court found that Rankin's destruction of records was intentional and that Rankin knew or should have known that some of the documents could have been relevant to the very issue upon which the June trial was adjourned. The court also found that the evidence did not support a finding that the destruction was an attempt to defraud Morrison of her cause of action, although there was more than sufficient evidence to support a finding that the destruction prejudiced Morrison. It noted that there was insufficient evidence that any attorneys willingly or knowingly allowed the destruction.

¶ 12. The court ruled that the jury would be instructed concerning Rankin's destruction of records and awarded Morrison fees and costs. The court ruled

---

[2] Rankin ceased practicing medicine on July 30, 1999, approximately six weeks after Morrison's surgery. He testified that he believed that the last date on which he performed surgery was about July 20, 1999, and therefore five years had expired by the time he destroyed the records on July 28, 2004.

further that Medical Protective and the Fund were not relieved from their responsibility to insure and represent Rankin.

¶ 13. Medical Protective and the Fund moved for reconsideration and raised a policy coverage defense.[3] After additional briefing, the court altered its original ruling and held that Rankin should have known that the documents he destroyed may have had relevance to a retrial on the issue of informed consent and that the destruction raised the strong inference that the records would have revealed evidence that was unfavorable to Rankin and favorable to Morrison. The court determined that it would not be fair to require Morrison to undertake further discovery in an attempt to identify additional records beyond the destroyed patient records, which the court concluded could not possibly be compared to or contrasted with the destroyed records. The court then directed a verdict in favor of Morrison on the issue of informed consent and vacated its award of costs and fees. The court also reiterated its prior ruling regarding the legal nexus between Rankin, Medical Protective and the Fund and the duty of the insurers to represent and insure Rankin.

¶ 14. A second trial was held. Prior to trial, Rankin admitted that the surgery caused Morrison permanent nerve injury. Only the issue of damages remained, and on that issue the jury returned a verdict in the amount of $2,232,577.04. Rankin, Medical Protective and the Fund appeal; Medical Protective and the Fund also appeal the coverage issue.

---

[3] Rankin and Medical Protective were initially represented jointly in the matter by an attorney appointed by Medical Protective. Medical Protective raised the coverage defense by separate counsel.

## SANCTION FOR DESTRUCTION OF EVIDENCE

¶ 15. A trial court's decision whether to impose sanctions for the destruction or spoliation of evidence, and what sanction to impose, is committed to the trial court's discretion. *City of Stoughton v. Thomasson Lumber Co.*, 2004 WI App 6, ¶ 38, 269 Wis. 2d 339, 675 N.W.2d 487 (Ct. App. 2003) (citations omitted). We affirm discretionary rulings if the trial court has examined the relevant facts, applied a proper standard of law, and, utilizing a demonstratively rational process, reached a conclusion that a reasonable judge could reach. *Id.*

¶ 16. The primary purpose behind the doctrine of spoliation is two-fold: (1) to uphold the judicial system's truth-seeking function; and (2) to deter parties from destroying evidence. *Insurance Co. of N. Am. v. Cease Elec. Inc.*, 2004 WI App 15, ¶ 16, 269 Wis. 2d 286, 674 N.W.2d 886 (Ct. App. 2003), *aff'd*, 2004 WI 139, 276 Wis. 2d 361, 688 N.W.2d 462. When a party deliberately destroys documents, the court may find spoliation by applying a two-part analysis. First, the court should "consider . . . whether the party responsible for the destruction of evidence knew, or should have known, at the time it destroyed the evidence that litigation was a distinct possibility." *Id.*, ¶ 15. Second, the court should consider "whether the offending party destroyed documents which it knew, or should have known, would constitute evidence relevant to the pending or potential litigation." *Id.*

¶ 17. The first part of the test—whether Rankin knew or should have known that litigation was a

distinct possibility—was obviously met because Rankin was the defendant in a medical malpractice action at the time he destroyed the records. Rankin does not argue otherwise. With respect to the second part of the test, Rankin argues that the destruction of the records was an innocent act. He asserts that the records were destroyed to help ready his property for sale.[4] However, the fact that Rankin may have had a personal reason for destroying the documents does not relieve him of the obligation to preserve evidence for trial. *See, e.g., Sentry Ins. v. Royal Ins. Co. of Am.*, 196 Wis. 2d 907, 918–19, 539 N.W.2d 911 (Ct. App. 1995).

¶ 18. Rankin contends that he had ample reason to believe that the documents were not relevant to the Morrison litigation because informed consent was not at issue in the case. He bases this assertion on the stipulation by counsel at Morrison's deposition and the circuit court's earlier ruling that informed consent would not be an issue at trial. This argument ignores the court's later ruling that specifically set aside the stipulation regarding informed consent and adjourned the trial to give the parties the opportunity to develop

_____

[4] Rankin also asserts that the records he destroyed did not concern patients to whom he could be legally liable because the five-year statutes of limitation and repose for medical malpractice had expired. *See* Wis. Stat. § 893.55(1m)(a) and (b). Morrison responds that Rankin's legal obligation with respect to the destroyed records went beyond the provisions set forth in the statutes of limitation and repose. She points out that Wis. Stat. § 146.819(3)(a) and (b) require notice to former patients before destroying patient records, and Rankin does not claim that he provided such notice as required by the statute. However, Rankin's obligation to provide the required notice presents a different question than Rankin's obligation to preserve evidence for trial, which is at issue in the present case. Accordingly, we do not address this issue.

the issue. Rankin, along with the Medical Protective attorney who was representing him and the Fund's attorney, were in the courtroom at the time of this ruling.

¶ 19. The circuit court noted that the trial was specifically adjourned for the purpose of developing the informed consent issue, and that shortly thereafter, Rankin intentionally destroyed records that Rankin knew or should have known were relevant to this very issue. The court made the predicate findings under the test for spoliation. We conclude that the circuit court properly exercised its discretion in concluding that Rankin's actions constituted spoliation and were therefore sanctionable.

■

¶ 20. We turn next to the particular sanction imposed. WISCONSIN STAT. §§ 804.12(2)(a) and 805.03 permit circuit courts to impose "just" sanctions, including dismissal, for failure to comply with court orders.[5] Because dismissal is such a harsh sanction, however, the supreme court has held that dismissal is proper only when the plaintiff has acted egregiously or in bad faith.[6]

---

[5] Under WIS. STAT. § 804.12(2)(a), "[i]f a party . . . fails to obey an order to provide or permit discovery, . . . the court . . . may make such orders in regard to the failure as are just, [including] . . . dismissing the action."

Section 805.03 provides, "[f]or failure of any claimant to prosecute or for failure of any party to comply with the statutes governing procedure in civil actions or to obey any order of [the] court, the court . . . may make such orders in regard to the failure as are just, including . . . orders authorized under § 804.12(2)(a)."

[6] The parties base their arguments on cases involving dismissal and we see no meaningful basis upon which to distinguish between dismissal of claims and directing a verdict

*See Industrial Roofing Servs., Inc. v. Marquardt*, 2007 WI 19, ¶ 43, 299 Wis. 2d 81, 726 N.W.2d 898. Egregious conduct means a conscious attempt to affect the outcome of litigation or a flagrant, knowing disregard of the judicial process. *Garfoot v. Fireman's Fund Ins. Co.*, 228 Wis. 2d 707, 719, 599 N.W.2d 411 (Ct. App. 1999). Upon such a showing, the court may impose sanctions regardless of whether the destruction "impaired the opposing party's ability to present a claim or defense." *Id.* at 731.

■

¶ 21. In the present case the circuit court held as follows:

> The initial trial in this matter was aborted in June of 2004 for the sole reason of allowing the plaintiff to develop the cause of action related to informed consent. Knowing that, shortly thereafter, Dr. Rankin destroyed his medical records. Not only should Dr. Rankin have recognized his duty to maintain patient records, but he should have known that some or all of those records may have had relevance to a retrial on the issue of informed consent and may have been favorable to the plaintiff in developing that cause of action. In fact, I firmly believe the doctor's destruction of his records raises a strong inference that the records destroyed would have revealed evidence that was unfavorable to Dr. Rankin and favorable to the plaintiff.

> At this point, based solely upon Dr. Rankin's actions, it would not be fair to require the plaintiff to defend against defendants' challenges, engage in further, possibly lengthy discovery, including discovery related to the possibility of availability of some other records (which could not possibly be compared to or contrasted with the destroyed records), name addi-

---

on causation for purpose of determining whether the sanction was "just" under the circumstances.

tional experts, nor engage in any other activities which would only generate additional time and expense. In short, the innocent plaintiff should not pay for the sins of Dr. Rankin.

While the circuit court did not make an explicit finding of bad faith or egregious conduct, that is the clear import of its comments and the record provides a reasonable basis for that implicit finding. *See Paytes v. Kost*, 167 Wis. 2d 387, 394, 482 N.W.2d 130 (Ct. App. 1992) (the law does not require a circuit court to make an explicit finding of bad faith or egregious conduct before imposing a sanction).

¶ 22. Rankin argues that in its initial ruling on sanctions, the court faulted him with not recognizing that the destroyed records might affect the trial, but that the court "did not detect any ulterior motive" in Rankin's actions. Thus, Rankin argues that there was no egregious conduct on his part.

¶ 23. Rankin overlooks the fact that the circuit court later reconsidered the ruling upon which he relies. The circuit court initially concluded that Rankin's conduct was not intended to defraud Morrison of her cause of action, but rather prejudiced her claim. In its second ruling, however, it is apparent that the court viewed things differently. The court concluded that, not only did Rankin act intentionally, but that he likely did so knowing that the destruction would eliminate evidence that would have been favorable to Morrison and unfavorable to him. It was not necessary for the court to expressly repudiate its earlier determination regarding the level of Rankin's culpability; it implicitly did so. The court's second ruling goes to Rankin's attempt to affect the outcome of the litigation, which constitutes egregious conduct. *See Garfoot*, 228 Wis. 2d at 724.

¶ 24. The circuit court noted the difficulty Morrison would likely experience in trying to identify and locate alternative records that might bear on Rankin's complication rate, given the fact that the destroyed records were the only complete set of medical records regarding Rankin's other BAK surgery patients. As Morrison argued, the records Rankin destroyed were essential to Morrison's informed consent claim. Morrison's attorney informed the court that Morrison had obtained records regarding six of Rankin's BAK cage patients from the hospital where the surgeries took place, but that the hospital records indicated that there were nineteen additional such patients. Rankin claimed that Morrison could recreate the data by using the hospital records, but Morrison responded that the complications could have occurred after patients left the hospital and were under follow-up care with Rankin, which is what happened in her case. Only Rankin's full patient records could tell the entire story. Upon a showing of egregious conduct, a court may impose sanctions regardless of whether the destruction "impaired the opposing party's ability to present a claim or defense." *Id.* at 731. Here, the court reasonably found that Rankin's destruction of medical records did in fact impair Morrison's ability to present her claim.

¶ 25. Rankin argues that under *Hudson Diesel, Inc. v. Kenall*, 194 Wis. 2d 531, 545, 535 N.W.2d 65 (Ct. App. 1995), dismissal for failure to respond to discovery and follow court orders requires that the offending action must be persistent and not limited to a single event. We disagree. In *Hudson Diesel,* we reviewed a circuit court's decision to impose dismissal as a sanction for a party's inadequate response to a discovery request. We concluded that the discovery response was inadequate, but did not rise to the level of egregious conduct

because it was not extreme or persistent. *Id.* at 544–45. Accordingly, we ruled that the circuit court erred by dismissing the complaint. We did not hold that in order to be egregious, conduct must always be persistent. Here Rankin destroyed all of his medical records in a single act. The magnitude of the loss under the circumstances described above is sufficient to constitute egregious conduct.

¶ 26. Rankin also argues that under *Hudson Diesel*, the circuit court was required to determine whether a less severe sanction was available to remedy the non-complying party's discovery violation before dismissal could be ordered. We did impose such a requirement in *Hudson Diesel*, but limited the holding to cases in which the conduct that is the basis for dismissal is not intentional or in bad faith. *See id.* In the present case, the circuit court explicitly concluded that Rankin's actions were intentional and implicitly concluded that his conduct was egregious. Accordingly, *Hudson Diesel* does not apply.

¶ 27. We conclude that the circuit court properly considered whether Rankin's conduct rose to the level of culpability justifying a directed verdict. The court examined the relevant facts and applied the correct standard of law. Accordingly, we conclude that the court properly exercised its discretion in directing a verdict as a sanction for Rankin's conduct.

## MEDICAL PROTECTIVE'S DUTY TO INSURE

¶ 28. Medical Protective argues that the destruction of records does not constitute "professional services" under the policy. It also argues that the damages awarded to Morrison were imposed as a result of a

sanction and therefore are not "compensatory damages." Therefore, according to Medical Protective, Rankin is not covered under the terms of its medical malpractice policy. We disagree.

¶ 29. Rankin's Medical Protective policy provides in pertinent part that "the Company hereby agrees to defend and pay damages, in the name and on behalf of the Insured or his estate, . . . in any claim for damages . . . based on professional services rendered or which should have been rendered . . ., by the insured . . . in the practice of the insured's profession . . . ." The policy provides further that it does not cover "any punitive damages or damages over and above actual compensatory damages, which may be assessed against the Insured."

¶ 30. The interpretation of a written insurance policy presents a question of law which we decide de novo.[7] *Langone v. American Family Mut. Ins. Co.*, 2007

---

[7] Morrison argues that Medical Protective raised the coverage issue for the first time in its motion for reconsideration of the court's decision to sanction Rankin and that the circuit court had discretion to reject a new argument raised at that time pursuant to *Koepsell's Olde Popcorn Wagons, Inc. v. Koepsell's Festival Popcorn Wagons, Ltd.*, 2004 WI App 129, ¶ 44, 275 Wis. 2d 397, 685 N.W.2d 853. The circuit court used virtually the same language regarding coverage in both its initial ruling on sanctions and in its subsequent ruling on reconsideration. In opposing reconsideration, Morrison advanced various legal arguments to the circuit court as to why Medical Protective and the Fund were legally required to insure Rankin, but did not argue at that time that the coverage issue was untimely raised. We assume, therefore, that the circuit court did not reject the coverage argument because it was untimely raised, which would be a discretionary ruling, but on its merits.

WI App 121, ¶ 8, 300 Wis. 2d 742, 731 N.W.2d 334. The language of an insurance policy is interpreted in the same way as other contracts. *Id.* Courts consider the language's plain and ordinary meaning as understood by a reasonable insured. *Id.*

¶ 31. Morrison claims that Rankin performed surgery on her without obtaining her informed consent and that his negligence caused her injury and related damages. Morrison's claim was directly related to professional services rendered or not rendered by Rankin, not spoliation, and the jury's award was plainly compensatory for damages she suffered as a result of Rankin's professional negligence. We are not persuaded by Medical Protective's arguments to the contrary.

¶ 32. The cases upon which Medical Protective relies are from other jurisdictions in which courts have concluded that a spoliation tort claim is not covered under a policy limited to "bodily injury." *See Johnson v. Evan Hall Sugar Coop., Inc.*, 836 So. 2d 484, 484–88 (La. Ct. App. 2002); *Fremont Cas. Ins. Co. v. Ace-Chicago Great Dane Corp.*, 739 N.E.2d 85, 91–92 (Ill. App. Ct. 2000); *Humana Worker's Comp. Servs. v. Home Emergency Servs., Inc.*, 842 So. 2d 778, 781 (Fla. 2003).[8] As Morrison points out, she did not sue Rankin for tortious spoliation and Medical Protective's policy was not limited to "bodily injury." These cases do not support Medical Protective's position.

¶ 33. Medical Protective argues further that there is no authority under which spoliation sanctions can

---

[8] In addition, Medical Protective refers to *Farr v. Evenflo Co., Inc.*, No. 04–1149, unpublished slip op. (WI App Aug. 4, 2005). Under WIS. STAT. § 809.23(3), a party may not cite to an unpublished opinion as precedent or authority. *See City of Madison v. Lange*, 140 Wis. 2d 1, 6 n.2, 408 N.W.2d 763 (Ct. App. 1987).

run to an insurer. As noted above, Medical Protective's obligation to insure does not arise from spoliation sanctions; it arises from the terms of its medical malpractice policy insuring Rankin against claims for negligent medical acts undertaken in the course of rendering professional medical care. Moreover, Medical Protective cites no Wisconsin authority in support of its assertion that spoliation must be segregated in some fashion from an underlying malpractice claim.[9] For the reasons discussed above, we conclude that Medical Protective is obligated to insure Rankin under the terms of its malpractice policy.

## THE FUND'S OBLIGATION TO INSURE

¶ 34. The Fund's arguments regarding coverage mirror those of Medical Protective—namely, that it does not cover liability imposed as a sanction and instead covers medical malpractice claims. For the same reasons that we conclude that Medical Protective must insure Rankin, we conclude that the Fund must provide excess coverage.

¶ 35. Under Wisconsin law, health care providers must maintain one million dollars in health care liability coverage. *See* Wis. Stat. § 655.23(4)(b)2. Excess coverage over that amount is provided by the Fund pursuant to Wis. Stat. § 655.27(1), which provides that "[t]here is created an injured patients and families compensation fund for the purpose of paying that

---

[9] Medical Protective also argues that it is shielded from judgment under the Direct Action Statute, Wis. Stat. § 632.24. Medical Protective's argument is premised on an assumption that its policy does not cover liability imposed on Rankin in this case. Because we conclude otherwise, we reject this argument.

portion of a medical malpractice claim which is in excess of the limits expressed in § 655.23(4) . . . ."

¶ 36. Under this statutory provision, the Fund is obligated to provide excess coverage against medical malpractice claims. Here, Morrison claimed that Rankin committed medical malpractice by failing to secure her informed consent to BAK cage surgery. The Fund's obligation to provide coverage to Rankin was triggered by the jury verdict, which exceeded Medical Protective's policy limits. The jury awarded damages based on Morrison's lack of informed consent claim, not for spoliation. Therefore, under WIS. STAT. § 655.27(1), the Fund is obligated to provide coverage to Rankin for those amounts in excess of Medical Protective's policy limits.

¶ 37. The Fund argues that the circuit court's decision deprives it of its right to a jury trial. We disagree. It provides no authority for the proposition that it has such a constitutional right under the circumstances presented in this case. Even if it does, however, the right to a jury trial is not absolute. The right to a jury trial does not prevent a court from entering dismissal or default judgment to sanction litigants. *See Schultz v. Sykes,* 2001 WI App 255, ¶ 22, 248 Wis. 2d 746, 638 N.W.2d 604. As the circuit court concluded, the Fund's interests are directly aligned with the interests of Rankin and Medical Protective, and its stake in the case is directly tied to Rankin's liability. Once the circuit court determined Rankin's liability as a matter of law (regardless of whether that determination resulted from a sanction or a legal conclusion based on the evidence), the only remaining factual issue in dispute was the amount of damages. This issue was resolved by a jury.

¶ 38. For all of the above reasons, we conclude that the Fund was obligated to provide excess insurance pursuant to its obligation under Wis. Stat. § 655.27(1).

## MORRISON'S MOTION FOR COSTS AND FEES

¶ 39. Morrison asks that we impose costs and attorney fees against Medical Protective under Wis. Stat. Rule 809.25(3)(c) because, she asserts, this appeal is frivolous. We may impose attorney fees under Rule 809.25(3)(c) only if the entire appeal is frivolous. *State ex rel. Robinson v. Town of Bristol*, 2003 WI App 97, ¶ 54, 264 Wis. 2d 318, 667 N.W.2d 14. Although we have decided against Medical Protective on the issues it raises, we cannot say that its arguments are wholly frivolous. We therefore deny the motion for costs and attorney fees.

*By the Court.*—Orders affirmed.